IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **DEMAROE COLBERT**<br>3872 E 123rd Street, Upstairs<br>Cleveland, Ohio 44105,<br><br>    and<br><br>**DEMAROE COLBERT**<br>as parent and guardian of minor<br>**DAVID MOSLEY**<br>3872 E 123rd Street, Upstairs<br>Cleveland, Ohio 44105,<br><br>        Plaintiffs,<br><br>    v.<br><br>**CUYAHOGA METROPOLITAN**<br>**HOUSING AUTHORITY**<br>8120 Kinsman Road<br>Cleveland, Ohio 44104,<br><br>    and<br><br>**DETECTIVE CLINTON OVALLE**<br>c/o Cuyahoga Metropolitan Housing<br>Authority Police Department<br>5715 Woodland Avenue<br>Cleveland, Ohio 44104,<br><br>    and<br><br>**JOHN AND JANE DOES #1 - 10**<br>c/o Cuyahoga Metropolitan Housing<br>Authority Police Department<br>5715 Woodland Avenue<br>Cleveland, Ohio 44104,<br><br>        Defendants. | CASE NO.<br><br><br>JUDGE:<br><br><br><br><br>**COMPLAINT AND JURY DEMAND** |

## I. INTRODUCTION

Now come Plaintiffs Demaroe Colbert and David Mosley, by and through undersigned counsel, and for their Complaint state as follows:

## II.  JURISDICTION

1. Jurisdiction over claims brought under the Civil Rights Act of 1871 is conferred on this Court by 28 U.S.C. §§ 1331, 1343 (3) and (4).  Jurisdiction over the state law claims is conferred by 28 U.S.C. §1367.  Venue is proper in this Division.

## III.  PARTIES

2. Plaintiff Demaroe Colbert ("Mr. Colbert") was a resident of the City of Cleveland and Cuyahoga County, Ohio during all times relevant to this action. He brings this action on his own behalf for damages resulting from the violation of rights secured by the United States Constitution and the laws of the State of Ohio.

3. David Mosley ("David") was a resident of the City of Cleveland and Cuyahoga County, Ohio during all times relevant to this action. Mr. Colbert, as parent and guardian, brings this action on David's behalf for damages resulting from the violation of rights secured by the United States Constitution and the laws of the State of Ohio.

4. Defendant Cuyahoga Metropolitan Housing Authority ("CMHA") is a body corporate and politic duly created pursuant to R.C. § 3735 and engaged in its statutorily mandated duties as a housing authority, including employing a police force, the Cuyahoga Metropolitan Housing Authority Police Department ("CMHA PD"). Defendant CMHA is headquartered in the City of Cleveland and oversees its duties as housing authority throughout Cuyahoga County, excluding Chagrin Falls Township. It is a state actor and a "person" for purposes of 42 U.S.C §1983.

5. Defendant Detective Clinton Ovalle ("Detective Ovalle") was at all times relevant to this action an employee of the CMHA PD, serving as a detective.  Detective Ovalle is sued in his individual and official capacities.  Detective Ovalle is a person under 42 U.S.C. §1983 and at all times relevant to this case acted under color of state law and as an employee of the CMHA PD.

6. Defendant John and Jane Does #1 – 10 ("Defendants Doe") are employees, agents and/or contractors of Defendant CMHA, who were involved in the incident or review of the incident between the CMHA PD and the Plaintiffs on July 24, 2013. Defendants Doe are sued their individual and official capacities. Defendants Doe are each a person under 42 U.S.C. §1983 and at all times relevant to this case acted under color of state law and as employees of the CMHA PD.

### IV. FACTS

7. Mr. Colbert and his son David lived in the upstairs apartment of a duplex located at 3872 E 123rd Street, Cleveland, Ohio 44104.

8. Mr. Colbert's apartment and the downstairs apartment each had separate and distinct living quarters, bedrooms, bathrooms, and kitchens.

9. Two separate mail boxes were located on the side of the front porch of the premises, and are visible from the street.

10. Two electric meters are located on the side of the premises, and are visible from the street.

11. The entrance to Mr. Colbert's apartment is located on the side of the house.

12. The front porch door of the premises located at 3872 E 123rd Street leads directly into the first floor apartment.

13. On July 19, 2013, Detective Ovalle obtained a warrant from the Cuyahoga County Court of Common Pleas to search the premises located at 3872 E 123rd Street. (Exhibit A).

14. The warrant mistakenly describes the premises located at 3872 E 123rd Street as a single family home. (Exhibit A).

15. In his affidavit, Detective Ovalle stated that a Confidential Reliable Informant (CRI) told him that a dark skinned male known as B.G. was involved in selling ecstasy from the front porch of 3872 E 123rd Street. (Exhibit A).

16. Detective Ovalle also averred that he had observed B.G. sell ecstasy to the CRI on the porch of 3872 E 123rd Street. After the sale, Detective Ovalle observed B.G. enter the residence through the front porch door. (Exhibit A).

17. Detective Ovalle further averred that,"he observed heavy foot traffic of individuals to and from the premises to be searched. In those incidents, individuals would walk to the . . . porch . . . and make suspected hand-to-hand drug transactions with the same dark skinned black male as described above from that porch." (Exhibit A).

18. The search warrant does not mention Mr. Colbert or his second floor apartment. (Exhibit A).

19. The warrant was executed on July 24, 2013.

20. Defendant[s] Doe first searched the downstairs apartment and subsequently arrested the B.G., the target of the investigation and search warrant.

21. Defendants Doe then proceeded upstairs to search Mr. Colbert's apartment.

22. Mr. Colbert was inside along with his son David, his fourteen-year-old nephew, and his two pitbull terriers, Rayna and Tyson.

23. Mr. Colbert answered the door while holding his dogs. He told Defendants Doe that his apartment was completely separate from the apartment below.

24. Defendant Doe told Mr. Colbert, "You better put those mother-fucking dogs up or I'm going to kill them."

25. Mr. Colbert put the dogs in David's bedroom and closed the door. He then told Defendants Doe that he had put the dogs in the bedroom.

26. Defendants Doe then ordered Mr. Colbert, his nephew, and David to lay face down on the floor and Defendants began their warrantless search of Mr. Colbert's apartment, starting in the kitchen.

27. As Defendants Doe searched, Mr. Colbert's dogs could be heard barking in David's bedroom.

28. Defendant Doe stood in front of the closed door to David's room. Without warning Defendant Doe raised his gun, opened the door slightly, and began firing into David's bedroom.

29. Defendant Doe fired numerous shots into the room killing both dogs.

30. Defendants Doe never asked Mr. Colbert to remove his dogs from David's room, nor did Defendants Doe warn him that the dogs were not properly contained.

31. After completing their search, Defendants Doe left Mr. Colbert's apartment, leaving the dead dogs on David's bedroom floor. Defendants Doe dispatched the animal warden to pick up the dogs.

32. Both Mr. Colbert and David were handcuffed and taken to the downstairs apartment.

33. David's room was left a bloody mess. The floor was blood stained and bullet holes were visible in the door, walls, and floor.

34. Since the dogs were killed, David refuses to sleep in his bedroom. David now sleeps on the floor of his sister's room rather than sleep in his own room.

## V. FIRST CAUSE OF ACTION
### 42 U.S.C. §1983 Violation of the Fourth Amendment
### to the United States Constitution for Unlawful Search and Seizure

35. Defendants have, under color of law, deprived Plaintiffs of the rights, privileges and immunities secured to them by the Fourth and Fourteenth Amendments to the United States Constitution, including but not limited to the right to be free from unreasonable search and seizure.

36. Defendants falsely arrested and detained Plaintiffs without justification and without probable cause thus violating Plaintiffs' rights under the Fourth and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. § 1983.

37. The Defendants' conduct, as described above, violated the Plaintiffs' clearly established constitutional rights and was deliberately indifferent to the Plaintiffs' constitutional rights.

38. The Defendants' acts were unreasonable and shocked the conscience. The Defendants acted with intent, malice, bad faith, and criminal recklessness.

39. Defendants, CMHA and Defendants Doe, established customs, policies, practices and/or procedures, including but not limited to those effectuating warrant sweeps and arrests, that were a moving force behind the constitutional violations suffered by Plaintiffs during the warrant sweep.

40. Defendants, CMHA and Defendants Doe, are also liable because they have ratified the unconstitutional acts that the Defendant Officers committed against Plaintiffs. These Defendants failed to adequately investigate and address, or otherwise respond to and attempt to correct the behaviors by the Defendant Officers that caused the violation of Plaintiffs' constitutional rights. These Defendants' ratification was a moving force behind the constitutional violations suffered by Plaintiffs.

41. CMHA and CMHA PD policies and procedures were the moving force behind the constitutional violations and injuries sustained by Plaintiffs.

## VI. SECOND CAUSE OF ACTION
### State Law Intentional Infliction of Emotional Distress

42. The Defendants intended to cause emotional distress, or knew or should have known that the actions they took would result in serious emotional distress.

43. The Defendants' conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it could be considered utterly intolerable in a civilized community.

44. The Defendants' acts were the proximate cause of David's emotional and psychological injuries.

45. The mental anguish suffered by David as a result of the Defendants' acts, as described above, were serious and of a nature such that no reasonable person could be expected to endure it.

## VII. THIRD CAUSE OF ACTION
### Negligent Destruction of Personal Property

46. Defendants owe a duty of care to Plaintiffs not to unreasonably damage their personal property while executing a search warrant in Plaintiff's home.

47. Defendants breached their duty of care by unnecessarily killing Plaintiffs' dogs.

48. Defendants breach is the actual and proximate cause of Plaintiff's injury.

49. As a result of Defendants' breach Plaintiffs have lost their dogs and their home has been damaged.

## VIII. JURY DEMAND

50. Plaintiffs request a jury trial on all claims triable to a jury.

## IX.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands that this Court:

A. Award Plaintiffs compensatory damages in an amount to be shown at trial;

B. Award Plaintiffs punitive damages in an amount to be shown at trial;

C. Award Plaintiffs reasonable attorney's fees, costs and disbursements;

D. Pre and post judgment interest;

E. Grant Plaintiffs such additional relief as the Court deems just and proper.

Respectfully submitted,

/s/ Bret Jordan, /s/ Marcus S. Sidoti
Bret Jordan, 0059939
Marcus S. Sidoti, 0077476
Jordan | Sidoti LLP
The Terminal Tower
50 Public Square, Suite 1900
Cleveland, Ohio 44113
(office) 216-357-3350
(fax) 216-696-1411
marcus@jordansidoti.com
bret@jordansidoti.com